EARL SIMONSON v. STATE.

No. A-4944. Opinion Filed Oct. 9, 1925.
Rehearing Denied Jan. 23, 1926.
(242 Pac. 279.)

114

A. M. Stewart and Wm. M. Williams, for plaintiff in error.

The Attorney General and Fred Hansen, Asst. Atty. Gen., for the State.

BESSEY, P. J. Earl Simonson, plaintiff in error, herein referred to as the defendant, was convicted in the district court of Harmon county of conjoint robbery, and his punishment fixed by the jury at confinement for a term of five years in the state reformatory at Granite. From the judgment on the verdict, he appeals.

The defendant was charged jointly with Joe Allison for the commission of the crime, but a severance was had and the defendant tried alone. The facts, as disclosed by the record, show that shortly after a Christmas entertainment in the town of Hollis three boys or young men, Sid Crabb, Earl Dennis, and Oscar Leakey, were some distance from the place of the entertainment and were just about to get into a conveyance to go home when two men approached, one a large, tall man, and the other a smaller, short man, and commanded the three boys to "stick 'em up." This the boys did, and while one of the highwaymen pointed a pistol at them the other one went through their pockets and took their money, amounting in the aggregate

to $37. None of the persons robbed could identify either of the men who did the robbing.

E. R. Jones, a witness for the state, testified that he had known and been friendly with the defendant for several years; that a short time before the robbery he sold the defendant a 32, automatic pistol, receiving $7 in cash, the balance to be paid later; that on the morning after the robbery the defendant came to his store or cold drink stand at Gould, in Harmon county, and mentioned the fact that Oscar Leakey and the other two boys had been robbed the night before, and asked the witness if he had heard about it; defendant then stated to witness that he and Joe (Allison) were the ones who had committed the robbery. Part of the testimony of this witness is as follows:

"Q. Go ahead and tell what was said; that is what I want you to do. A. He said him and Joe got the money off of these fellows. I don't remember the names, and he told me it was 30 some dollars. Something over 30—37, or something—and he told me how scared Joe got.

"Q. How was that? A. He said something about, 'You ought to have seen Joe shake,' or something to that effect.

"Q. That is Joe Allison? A. Yes, sir. Well, of course, he didn't say Joe Allison, I don't think. He just said 'Joe.'

"Q. What else did he say? A. He said that he got the money while Joe held the gun, and said after they got the money that Joe told these boys to stand still until they got away, and he told them then to get in the buggy and drive south."

This witness further testified that later on, after the defendant had made bond, the defendant came to see him at the store and asked him to swear that the gun the defendant had obtained from him was so obtained after the date of the robbery, and asked the witness to give other false testimony.

After the sheriff had placed the defendant under arrest, and while he was taking him to Hollis, the sheriff

asked the defendant if he was guilty, and the defendant stated that he did not wish to make any statement with reference to the matter until he had discussed it with his father or mother. The sheriff then took him to his home and permitted him to have a private interview with his mother, and then conveyed him to Hollis, where he placed him in jail. On the following day, the sheriff took the defendant's father and two neighbors, Mr. Yoakum and Mr. Carmack, to the county jail in order that they might confer with the defendant. From the testimony of these neighbors it appears that the defendant admitted that he was guilty of the offense, but that he stated at that time that Joe Allison, charged jointly with him, was not guilty. Upon this feature of the case, Yoakum testified as follows:

"Well, we went to the courthouse, and they brought Earl out, and Mr. Carmack, Mr. Simonson, and myself were there in the sheriff's office with the sheriff over there, us four was in there, and Mr. Simonson said, 'Earl, we have come down to get you out. We want to know the truth, whether you are guilty or not.' He said, 'I think you are due it to me as your father to tell me whether you are guilty or not guilty. We will get you out, but I want to know whether you are guilty or not.' Earl 'says, 'I am guilty; but not as charged.' I said, 'What do you mean, Earl? Do you mean that you are not guilty?' He says, 'No, they have Joe and I both charged. I am guilty, and Joe is not.' I, said, 'Do you mean to say you held up the boys by yourself?' And he said, 'Joe wasn't with me.' "

An excerpt from the testimony of Carmack is as follows:

"I talked to Earl over there and asked him if he had an opportunity to talk with his father, and he said he hadn't, and I asked him again if he wanted to talk to his father, and I told him if I was him I would talk to my father before I made a statement in regard to the matter. However, I told him I would help in any way I could, if he was guilty or not guilty. * * * Earl was brought into the room (the jailor's office) and Mr. Simonson, myself, and Mr. Yoakum were there, and Mr. Simonson did the talk-

ing. He said, 'Earl, we have come after you. The men have all been very nice to you and come to get you out, right or wrong, and have made your bond, but we would be in better position to help you if we knew the truth, and want you to tell us the facts about it.' And he says, 'I am guilty, but not of what I am charged.' Mr. Yoakum spoke up and asked him what he meant by that. He said that he was guilty, but that Joe wasn't. His father then went on and told him he was glad he told it, and the best thing in the world he could do would be to plead guilty, and I told Earl if he would promise me and his father and Sam Yoakum to take our advice in the matter we would keep what he had told us until the proper time, and we would try and make arrangements to get him out the lightest we possibly could."

At the trial, the defendant, through his counsel, repeatedly objected to the testimony of Yoakum and Carmack, upon the ground that the statements made by the defendant to them were not voluntary or free from undue influence; that they were induced by promises from the father and these neighbors that they could probably procure a parole or suspended sentence if he made a confession. The court overruled these objections, and permitted these statements to go to the jury, with appropriate instructions as to whether or not the statements so made were free and voluntary.

We are constrained to hold that the court committed no error in permitting this testimony to go to the jury. The sheriff, who made the arrest, told the defendant that he need not make any statement if he preferred not to; the father and the two neighbors who visited him in jail were not persons in authority, and although they admonished him that they thought it would be better for him to tell the truth, regardless of whether he was innocent or guilty, it appears that whatever statements were made were to a large extent responsive to questions asked by the father of the defendant, and that no threats were made or undue influence exerted by any of the persons there present.

In Lucas v. State, 26 Okla. Cr. 23, 221 P. 798, this court reiterated the doctrine that confessions induced by promises of benefit or threats of harm made to a defendant by a prosecuting attorney or an officer having him in custody will be deemed involuntary and will be inadmissible in evidence. It is further held in that case that where the competency of a confession is challenged on the ground that it was not voluntary, its admissibility as evidence is primarily a question for the court. After the court decides that the confession is admissible, the defendant is then entitled to have the evidence in regard to the facts and circumstances under which the confession was made given anew to the jury, not for the purpose of permitting the jury to pass upon its competency, but for the purpose of enabling the jury to judge what weight and value should be given to such confession as evidence. If the jury are satisfied that the confession was not freely made, they may disregard it. Practically the same conclusions are stated in Mays v. State, 19 Okla. Cr. 102, 197 P. 1064.

In the cases cited, as well as in many other of our reported cases, the alleged confessions were made to the prosecuting attorney or to some other officer having or exercising authority over the accused. In this case, the alleged confession was made to the father and two neighbors and friends of the defendant.

In Beggarly v. State, 8 Baxt. (Tenn.) 520, the rule, relating to confessions made to persons not in authority, is stated thus:

"In regard to the person by whom the inducements were offered, there has been conflict in the authorities, some holding that the inducements held out by private persons, not being prosecutor, officer, or having any authority over the prisoner, are not sufficient to exclude confessions thus obtained; but the sounder rule manifestly is, that this is a mixed question of law and fact for the judge, and while it is proper to note the difference between confessions obtained by prosecutor, officer, or person in authority and

those obtained by private persons, yet, if, in fact, the confessions were forced from the prisoner through hope or fear presented to his mind by a third person, it should be rejected. In determining this the judge should look not only to the position and character of the person offering the inducements, as well as of the prisoner, and all the attending circumstances."

In the case of State v. Kirby, 1 Strob. (S. C.) 155, the following appears:

"But where the confessions are made on inducements held out by private persons having no authority over the prisoner or the prosecution, there seems to be no satisfactory conclusion to be drawn from the authority of decided cases, so as to lay down any definite rule which can be applied to the almost infinite variety of cases which occur. The same difficulty does not exist where the confessions are made to one in authority. There, it is true, the rule may sometimes fail of meeting the truth on account of the difference in age, experience and self-possession, in the midst of the most trying and difficult position in which man can be placed; yet, in general, it has been found to be a wise rule which excludes confessions made to such persons; and as it is always wise to narrow the bounds of discretion, whenever it is practicable, it has been adopted as a rule. But in the case of confessions made on suggestions of benefits, by private persons having no authority, the difficulty of laying down a more specific rule than the general one, that the confession must be voluntary, has suggested the idea that the question is a mixed one of law and fact, and that it must be left in a great degree to the judge to decide, under all the circumstances, whether the threats or inducements were such as to overcome the mind of the prisoner." Annotations, 7 A. L. R. 419.

The reasons for excluding confessions made under any circumstances is that the statements made by the accused may be untrustworthy, due to the influence exerted by the person to whom they were made. Applying that test to this case, we can see no reason why this defendant, under the circumstances as shown by the record, would make admissions of guilt, if he were in fact not guilty. The pre-

sumption is that a confession is voluntarily made. The burden is on the defendant to show that it was made under duress or undue influence. No sufficient showing of that kind appears here.

It is next contended that the corpus delicti was not shown by evidence independent of the confessions. In a robbery case, the corpus delicti is separate and distinct from the question of who committed the robbery. That a robbery was committed by some one was conclusively shown by evidence independent of the confessions. The robbery was shown by direct evidence, and the identity of both perpetrators was sufficiently shown by the several confessions and by significant circumstantial evidence. 7 R. C. L. 773 et seq.

The instructions given were fair to the defendant, and there was no error in the court's refusal to give the instructions proffered by the defendant relating to the corpus delicti, or on the question of reasonable doubt.

The judgment of the trial court is affirmed.

DOYLE and EDWARDS, JJ., concur.